UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CATHERINE BRADFORD                                                    PLAINTIFF

V.                              NO. 3:19CV00183-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]         DEFENDANT

**ORDER**

**I.   Introduction:**

Plaintiff, Catherine Bradford ("Bradford"), applied for disability benefits on August 27, 2013, alleging disability beginning on June 22, 2013. (Tr. at 171-181). After conducting a hearing on July 9, 2014, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 8-29). The Appeals Council denied her request for review on January 6, 2016. (Tr. at 1-4).

Bradford sought judicial review in this Court, and on January 17, 2017, the Court reversed the ALJ's decision that Bradford had no exertional impairments. (Tr. at 833-836); *Bradford v. SSA*, No. 3:16CV00031-JTR (E.D. Ark., Jan. 17, 2017). Based on the Court's decision, which recognized that Bradford did have documented back and knee pain, the Appeals Council remanded the case for another hearing and further development of the record with respect to Bradford's maximum Residual

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

Functional Capacity ("RFC"). *Id.*; (Tr. at 838-841).

After a second hearing, which took place on July 13, 2017, the ALJ, in a decision dated September 22, 2017, denied Bradford's application. (Tr. at 673-704). On May 15, 2019, the Appeals Council denied Bradford's request to review the ALJ's decision (Tr. at 663-666), making the ALJ's denial of Bradford's application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

## II. **The Commissioner's Decision:**

The ALJ found that Bradford had not engaged in substantial gainful activity since April 24, 2015, the amended alleged onset date.[3] (Tr. at 679). At Step Two, the ALJ found that Bradford had the following severe impairments: lumbar degenerative disc disease, bilateral knee osteoarthritis, chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, obesity, and adjustment disorder with depressed mood. *Id.*

---

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] At the second hearing, Bradford amended her alleged onset date to April 24, 2015, because she was 50 years old on that date, which is important for purposes of the Medical-Vocational Guidelines ("Grids"). (Tr. at 723-725). At the hearing, the ALJ admitted that if Bradford were limited to sedentary work, she would "grid out," because the Vocational Expert ("VE") testified that Bradford had no transferable skills to sedentary work in her age category. *Id.*

After finding that Bradford's impairments did not meet or equal a listed impairment (Tr. at 680), the ALJ determined that Bradford had the RFC to perform work at the light exertional level, except that: (1) she cannot climb ladders, ropes, or scaffolding and can only occasionally climb ramps or stairs; (2) she can only occasionally balance, stoop, kneel, crouch, and crawl; (3) she must avoid hazards such as unprotected heights and moving mechanical parts; (4) the work must not expose her to humidity, wetness, extreme cold, extreme heat, or pulmonary irritants such as dust, fumes, and odors; (5) the work must be unskilled, with simple, routine, and repetitive tasks; and (6) she can make simple work related decisions where there is only incidental interpersonal contact and the supervision required is simple, direct, and concrete. (Tr. at 682).

The ALJ found that, based on Bradford's RFC and testimony from the VE, she was able to perform her past relevant work as a cashier (unskilled, light exertional level). (Tr. at 691-693). Alternatively, relying upon the testimony of the VE, the ALJ found that, based on Bradford's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as pattern folder and sub assembler (both unskilled, light exertional level). *Id.* Thus, the ALJ concluded that Bradford was not disabled. *Id.*

## III. <u>Discussion:</u>

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

    B.   Bradford's Arguments on Appeal

Bradford contends that substantial evidence does not support the ALJ's

decision to deny benefits. She argues that the ALJ erred by not giving more weight to the two medical source statements of Connie Ash, APRN, Bradford's long-time treating provider, which resulted in an incorrect RFC determination. The Court finds support for this argument.

Bradford suffered from chronic hip, back, knee, and leg pain. An April 2014 lumbar MRI, ordered by Nurse Ash, showed disc bulging, degenerative spondylosis, spinal stenosis, and lower lumbar facet arthropathy. (Tr. at 660-661). April 2014 bilateral knee x-rays showed degenerative changes with bone-on-bone aspects, which explained Bradford's significant knee pain. (Tr. at 620). A May 2015 right knee x-ray showed degenerative spurring, meniscus injury, and patella fracture. (Tr. at 1343-1357).

Nurse Ash saw Bradford regularly for her pain issues for four years. Ash noted Bradford was routinely in "acute distress" and that Bradford was unable to sit still and bend without excruciating and unbearable pain, which worsened with activity (Tr. at 595-601, 620-624). Bradford was not able to hold 90-degree bending in her lumbar spine without severe back pain. (Tr. at 623-624). Nurse Ash prescribed strong pain medication, including Lortab, Ultram, Hydrocodone, Mobic, Naproxen, Tylenol #3, and multiple rounds of Prednisone. (Tr. at 602-622, 1540-1554, 1590-1595, 1661-1665, 1726-1729, 1771-1774). Repeatedly, Bradford said that these did

not help and she also experienced fatigue, vertigo, and nausea as side effects when taken these medications. *Id*. While treating for pain, Nurse Ash also tried to treat the side effects, which proved difficult, and required Bradford to be hospitalized. (Tr. at 1362-1407, 1582-1584, 1774-1776).

Nurse Ash recommended that Bradford see a specialist for her pain, and Bradford complied by seeing a pain management specialist (Dr. Jeffrey Hall, M.D.) and an orthopedist (Dr. Joseph Yao, M.D.). Dr. Hall found Bradford had limited range of motion, diffuse tenderness in the lumbar region, guarded muscle spasms, and positive Patrick's sign bilaterally. (Tr. at 649-659). Dr. Hall diagnosed lumbar facet syndrome and sacroiliac pain. (Tr. at 1279-1286). He administered steroid injections and medical branch blocks, which offered only temporary relief. (Tr. at 640-642). Bradford tried to walk and do chores when she experienced some pain relief, but her pain always returned. *Id*.

Dr. Yao suspected Bradford had aggravated patella pain due to an ACL deficiency. (Tr. at 613-615). He considered ACL reconstruction. *Id.* At the time however, he recommended strengthening exercises and a knee brace. *Id*. He recommended radiofrequency ablation. *Id.*, (Tr. at 1287). Dr. Yao told Bradford to avoid pivoting, rapid acceleration/deceleration, and high impact activities. *Id*.

Bradford tried physical therapy as prescribed but it gave her severe vertigo so

she stopped. (Tr. at 711-712). She complied with her doctors' recommendation to exercise, lose weight, and quit smoking, but found that her recurring pain and side effects from medication limited her. Still, she tried to walk 10-15 minutes a day for strengthening, but had to stop and lie down after such walks. (Tr. at 715-720). She did lose close to 40 pounds during the relevant time-period. (Tr. at 1761-1763).

The ALJ pointed to Bradford's admitted ability to do some chores, do light cooking, attend to personal care, feed her dog, play with her grandson, shop in stores, and drive as reason to discount Bradford's complaints of pain. (Tr. at 688). However, in a more recent function report and pain report, and also at the hearing, Bradford said she could hardly do any of these activities anymore due to pain and that she needed help from her daughter and grandson; she felt depressed and discouraged as a result and avoided all social activities. (Tr. at 688, 1018-1024).

Two consultative examining psychologists found that Bradford's mental impairments were the result of "pain issues" (the 2013 examiner observed that Bradford was in a great deal of pain during the exam and that she quit her last job due to pain). (Tr. at 509-517, 1717-1725). Pain and side effects from medication interfered with activities of daily living and both examiners found that pain would inhibit Bradford's ability to complete work tasks in an acceptable time-frame. *Id.*

Nurse Ash completed two medical source statements (in 2014 and 2016). (Tr.

at 636-638, 1756-1779). Nurse Ash based her opinion that Bradford could not even perform sedentary work on her long history of treating Bradford, Bradford's consistent subjective complaints, and the objective testing results. *Id*. Nurse Ash specifically cited to the lumbar MRI in her 2014 statement. *Id*. Nurse Ash said Bradford would need an option to shift at will from sitting to standing/or walking, would need longer than normal breaks, and would miss three days of work per month. *Id*. The record suggests that Bradford certainly could not do the standing and walking required for a light exertional job (the RFC was for light work, not sedentary).

    The ALJ gave Nurse Ash's two opinions little weight, without giving good reasons for doing so. (Tr. at 688-690). She gave the opinions of the two psychological examiners great weight, but did not credit at all their findings that Bradford's physical pain was her biggest problem. *Id*. The ALJ also incorrectly stated that no doctor had placed a functional restriction on Bradford when, in fact: (1) Dr. Yao told her to restrict her activity based on knee pain; and (2) Bradford testified that her doctor told her not to lift more than ten pounds and not to bend because of her back and hip pain. (Tr. at 613-615, 688, 712). While there is no note in the medical evidence of this lifting and bending restriction, the Court credits Bradford's statement given her compliance with aggressive treatment and the

consistency of her complaints over time, which were validated by exam notes from providers in the voluminous medical record.

Nurse Ash's opinion should have been given more weight, even though she was an APRN and not a medical doctor. In determining what weight to accord medical opinion evidence from an "acceptable medical source," such as a medical doctor, an ALJ must consider various factors including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; whether the source provides support for their findings; whether other evidence in the record is consistent with the source's findings; and the source's area of specialty. 20 C.F.R. § 404.1527(c). The Commissioner uses these same factors when considering opinions from "other medical sources," such as nurse practitioners or APRNs.[4] 20 C.F.R. § 404.1527(f); SSR 06-03p, 2006 WL 2329939, at *2 (Soc. Sec. Admin. Aug. 9, 2006).[5]

---

[4] Although 20 C.F.R. § 404.1527 does not specifically list APRNs as "other medical sources," district courts within the Eighth Circuit have ruled that they should be considered as such. *See Hunt v. Colvin*, No. 2:13CV42 CDP, 2014 WL 4072003, at *14 (E.D. Mo. Aug. 18, 2014) (recognizing an APRN opinion is not considered "acceptable medical source" under the Code of Federal Regulations, but rather, is considered an "other medical source"); *Moore v. Colvin*, No. 4:12-CV-3132, 2013 WL 5466910, at *21, n.11 (D. Neb. Sept. 30, 2013) (recognizing APRN opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file").

[5] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence to expand "acceptable medical sources" to include APRNs. 20 C.F.R. § 404.1502(a)(7). For evaluation of medical opinion evidence, the new rules apply to

9

While the ALJ rejected the opinion because it was "conclusory" and "seemed to uncritically accept as true most, if not all, of what [Bradford] reported," (Tr. at 689), the two consultative examiners also found pain to be a significant problem and Bradford's subjective complaints were consistent with the medical record. *See Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)(a patient's report of complaints is an "essential diagnostic tool").

Given Bradford's aggressive treatment history, her poor response to pain intervention (pain relief was short-lived), her medical history, and her honest but futile efforts to live a normal life in spite of pain, the Court finds that the ALJ erred in weighing the evidence and in arriving at Bradford's RFC. If the ALJ had given Nurse Ash's opinion proper weight, she would have concluded that Bradford could only perform sedentary work. Such a finding would have meant that Bradford was "gridded out" and disabled.

On remand, the ALJ should update the medical record and consider ordering a consultative examination for Bradford with a consulting orthopedist. The ALJ should then reconsider all of the medical opinions in arriving at Bradford's RFC.

---

claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c. Because the claim under review here was filed before March 27, 2017, the rules set out in 20 C.F.R. § 404.1527 govern the evaluation of Nurse Ash's opinion.

**IV. Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not give proper weight to the opinions of the medical providers, or assign an RFC reflective of those opinions.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 28th day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE